## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LOUIS GLUNZ BEER, INC.,

                     **Plaintiff,**

      vs.

CANVAS 340, LLC,

                    **Defendant.**

Case No. 26 CV 1124

### CANVAS 340, LLC'S MOTION TO DISMISS

Defendant, Canvas 340, LLC ("Canvas"), for its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

### Introduction

For approximately two years, Plaintiff served as Canvas's distributor of non-alcoholic seltzer in the Chicago area. After that relationship had run its course, Canvas, in compliance with the parties' distribution Agreement, exercised its right to terminate the agreement by paying the contractually agreed-upon termination fee. Plaintiff, in turn, filed this lawsuit, intent on extracting more. While this is a contract case, Plaintiff has thrown in a muck of other claims each of which has no basis in fact or law and should be dismissed.

Count II asserts a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; Count III asserts a claim under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*; and Count IV asserts a claim for unjust enrichment despite the existence of a written contract governing the parties' relationship. For Counts II and III, Plaintiff primarily relies on conclusory allegations that lack sufficient factual support, with several made only "upon information and belief." Plaintiff does not adequately identify a single protectable trade secret,

1

fails to allege plausible facts showing that Canvas improperly used or disclosed one, and does not plead any cognizable injury resulting from the alleged conduct. Instead, stripped of its conclusory assertions, the Complaint reveals a contract dispute. Because the Parties' relationship is governed by the Agreement, and Plaintiff asserts a claim for breach of that Agreement (Count I), Plaintiff's alternative claim for unjust enrichment (Count IV) also fails. Canvas is answering Count I.

## I.      FACTUAL BACKGROUND

Canvas markets and sells, through distribution partners, non-alcoholic seltzers containing hemp-derived cannabinoids. (Compl., ECF No. 1, ¶ 11.) From October 23, 2023, to August 28, 2025, Plaintiff served as Canvas's distributor of WYNK seltzers in the Chicago area under a distribution agreement (the "Agreement"). (*Id*., ¶¶ 15, 25.)  Plaintiff is not the only beverage distributor serving the Chicago area and Plaintiff concedes that it has "competitors in the marketplace." (*Id*., ¶¶ 10, 26.)

The Agreement expressly contemplated that the relationship would one day end and granted the parties the right to terminate it for any reason, or no reason, and defined their respective rights and obligations upon termination. (Compl., ¶ 17.) Canvas exercised its contractual right to terminate the Agreement, provided notice of termination, calculated the amount owed under the Agreement, and tendered the payment it owed under the Agreement. (Compl., ¶¶ 25, 34.) Plaintiff disputes the amount it is owed under the Agreement, which forms the basis of the Plaintiff's breach of contract claim (Count I).

In Counts II and III, Plaintiff alleges that it owns certain trade secrets which it generally describes as retailer account information and sales/marketing history related to the Canvas products sold to retailers. (Compl., ¶ 50.) But, as for Canvas' alleged misappropriation, Plaintiff

2

only alleges "[o]n information and belief" Canvas improperly ran reports, though Plaintiff does not say from where, and, allegedly, provided this information to successor distributors. (*Id.*, ¶ 55.)

Notably, Plaintiff does not allege that Canvas misappropriated information related to Plaintiff's other customers. Instead, while somewhat vague, Plaintiff suggests that Canvas took information related to Plaintiff's sale and marketing of *Canvas's products* and utilized that information after terminating the Agreement to sell Canvas's products to retailers who were already purchasing Canvas's products. (Compl., ¶ 53.) Plaintiff appears to allege that the identities of retailers selling WYNK beverages were trade secrets. But the names of retailers selling a product are not trade secrets, given that manufacturers and distributors both want the public to know where to buy the products. Plaintiff concedes that, in addition to Plaintiffs' salespeople, Canvas also had its own salespeople servicing retail accounts in the market. (*Id.*, ¶¶ 19, 33.) Plaintiff does not explain whether it contends that the information Canvas employees obtained directly from retail accounts as part of their employment with Canvas is somehow also Plaintiff's trade secret. Of course, Canvas knew the identity of the stores selling its products; this is not something Plaintiff would or could keep secret. Even if it could, it is unclear how the identities of retailers selling Canvas' products would constitute a trade secret of Plaintiff, rather than Canvas. Regardless, Plaintiff publicly discloses twelve of these retail accounts in its Complaint. (*Id.*, ¶ 28.)

As for its alleged damages for misappropriation, Plaintiff claims it is entitled to the profits made by Canvas' successor distributors until such time as it is paid the "remainder [of] the fair market value" it alleges it is owed for its breach of contract claim. (*Id.*, ¶ 56.) This is the same relief it seeks for its contract claim.

Finally, in Count IV, Plaintiff alleges a claim for unjust enrichment/quantum meruit "in the alternative to the contract-based claims." (Compl., ¶ 68.) Plaintiff alleges that Canvas was unjustly

3

enriched by receiving from Plaintiff the services it was required to provide under the Agreement. (*Id.*, ¶ 69.) Plaintiff does not allege that it provided any services or benefits to Canvas after termination or that it performed services for which it was not already compensated under the Agreement's payment terms. Instead, Plaintiff appears to seek additional compensation over and above the amounts due under the Agreement.

## II.     ARGUMENT

### A.     Standard of Review.

A court considering a motion to dismiss under Rule 12(b)(6) must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). However, the court need not accept as true statements of law or unsupported conclusory factual allegations. *Id*. To survive dismissal under Rule 12(b)(6), a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The plausibility standard requires the plaintiff to provide enough detail through its allegations to show that it is plausible, rather than merely speculative, that it is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

For its trade secret claims, Plaintiff does no more than recite statutory elements and relies on conclusory allegations made "upon information and belief." The Complaint fails to allege

plausible facts establishing a protectable trade secret or its misappropriation and instead relies on information that is merely general knowledge, based on industry experience, or publicly available. The Complaint fails to plausibly allege a protectable trade secret or misappropriation thereof. Dismissal is warranted.

### B. Plaintiff's Second and Third Claims Should Be Dismissed For Failure to Plausibly Identify Alleged Trade Secrets

The DTSA and ITSA are similar creatures and provide causes of action for the misappropriation of trade secrets, and courts apply substantially the same analysis to claims brought under either. Under either, plaintiff must show: (1) the existence of a trade secret, (2) misappropriation of that trade secret, and (3) resulting damages. To qualify as a trade secret, the information must derive independent economic value from not being generally known or readily ascertainable by others and must be the subject of reasonable efforts to maintain its secrecy; a plaintiff can show misappropriation in three ways: by showing unauthorized acquisition, disclosure, or use of a trade secret. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd*, 965 F.3d 571, 577 (7th Cir. 2020); 18 U.S.C. § 1839; 765 ILCS 1065/2.

Under the first element, Plaintiff fails to adequately identify any protectable trade secrets. Instead, it characterizes ordinary business information—information that is publicly available, readily ascertainable, or easily reverse-engineered—as trade secret information. The alleged information relates to Canvas's products, and Plaintiff does not seemingly allege misappropriation of information concerning any other customers. (Compl., ¶ 53.) The allegations of misappropriation are equally deficient. Plaintiff contractually granted Canvas access to the information, and the Agreement expressly contemplated Canvas's continued possession of shared information. Yet Plaintiff largely bases its misappropriation theory on conclusory allegations made

"upon information and belief," without pleading facts showing any actual misuse or improper disclosure.

### 1. Plaintiff Fails to Identify a Protected Trade Secret with Sufficient Particularity

To state a trade secret claim, a plaintiff must allege facts identifying the information at issue and showing that it plausibly qualifies as a trade secret. *Chatterplug, Inc. v. Digital Intent, LLC*, No. 1:16-CV-4056, 2016 WL 6395409, at *3 (N.D. Ill. Oct. 28, 2016) ("Defendants are entitled to be able to discern what trade secrets are at issue."). A plaintiff cannot rely upon general categories of information but must provide sufficient detail of its purported trade secret. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (a plaintiff must do more than identify a general category of information and invite the court to hunt for a trade secret); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (plaintiffs must identify "concrete secrets," not broad areas of information).

Plaintiff fails to adequately plead a trade secret. Rather than identify specific trade secrets, it lists sweeping categories of ordinary business information, including "retailer contacts, sales levels, depletion amounts, retailer purchasing information, pricing ladders, promotion cadence, feature/reset calendars, and sales programs." (Compl., ¶ 18.) These categories encompass the types of information routinely exchanged between manufacturers and distributors in the ordinary course of a distributorship relationship, leaving Canvas unable to discern what information—if any— Plaintiff contends constitutes a trade secret.

Plaintiff similarly asserts that Plaintiff's sales representatives and their "specialized knowledge of the market" constitute confidential trade secrets. (*Id.,* ¶ 19.) This vague characterization does not identify any concrete, protectable secrets and fails to place Canvas on notice of the allegedly protected information. The Seventh Circuit has made clear that a plaintiff

cannot simply point to broad categories of information and invite the court to hunt for a trade secret within them. *IDX*, 285 F.3d at 584.

Plaintiff's allegations are similar to those types of purported trade secrets rejected in *Composite Marine*, where the plaintiff attempted to claim trade secret protection over broad categories such as "marketing plans and strategies" and other generalized information. 962 F.2d at 1266. The court rejected those claims, explaining that the idea of making and selling a product through "usual channels" in an industry is not a trade secret, and holding that plaintiffs must identify "concrete secrets," not general areas of information or technology. *Id*. at 1265-66.

Other courts have likewise rejected attempts to assert trade secret claims based on broad descriptions of information exchanged in commercial relationships. In *Sysco Machinery Corp. v. DCS USA Corp.*, the Fourth Circuit affirmed dismissal of DTSA claims arising from a manufacturer–distributor relationship where the plaintiff failed to describe its alleged trade secrets with sufficient specificity. 143 F.4th 222 (4th Cir. 2025). The court held that a plaintiff must identify the alleged trade secrets with sufficient detail to show they plausibly meet the statutory requirements of secrecy and independent economic value, and that "[n]either the defendant nor the court should be forced into a fishing expedition to find evidence of a valid trade secret in the pleadings." *Id*. at 228.

Plaintiff advances precisely the type of overly broad theory that has been rejected in these and other cases. Rather than identifying specific information that plausibly meets the statutory requirements of secrecy, independent economic value, and reasonable protective measures, the Plaintiff broadly labels ordinary business information as trade secrets and suggests that Canvas violated trade secret law merely by continuing to conduct business after the parties' relationship ended. The statutes and case law do not permit such sweeping assertions.

By pointing only to broad categories, such as "sales levels," "retailer contacts," and "specialized knowledge regarding the market," the Complaint fails to identify any concrete, particularized trade secrets and should be dismissed.

### 2. Even if Plaintiffs' Broad Categories were Sufficient, the Information is not a Trade Secret.

Plaintiff bears the burden of alleging facts showing that the information it claims as a trade secret is not generally known or readily ascertainable through proper means, including publicly available sources or industry knowledge. *Fleetwood Packaging v. Hein,* No. 14 C 9670, 2014 WL 7146439, at *4 (N.D. Ill. Dec. 15, 2014). This is particularly true where the purported trade secret, such as customer identities, is generally known by others in the specific industry or it is readily available through other means. *Sys. Dev. Servs., Inc. v. Haarmann*, 907 N.E.2d 63, 74 (Ill. App. Ct. 2009); *Carbonic Fire Extinguishers, Inc. v. Heath*, 547 N.E.2d 675, 677–78 (Ill. App. Ct. 1989). Whether a plaintiff "spent years developing customer relationships and building a database that contained customer preferences … sheds little light on the pool of potential customers and the secrecy of their contact information." *BCD Tech. Holdings, LLC, v. Paragon Micro, Inc.*, No. 25 CV 6944, 2026 WL 788078, at *17 (N.D. Ill. Mar. 20, 2026). For example, information such as "depletion histories" and "promotion cadence" can be easily identified from Canvas's own sales records and general industry knowledge (*e.g.*, St. Patrick's Day promotions are effective in March). (Compl., ¶ 50.) Further, this information may be reverse engineered by using VIP as Canvas has access to similar data sets. *See*, *e.g.*, NielsenIQ, Consumer Trends, Nielsen IQ, https://nielseniq.com/global/en/solutions/consumer-behavior-and-insights/consumer-trends/ (last visited Mar. 28, 2026).

Plaintiff is a distributor of beverages in the greater Chicago area whose customer base consists of those retail businesses that hold licenses from the State of Illinois to sell beverages,

particularly alcoholic beverages, to consumers. These customers are not exclusive to Plaintiff as retail accounts purchase from numerous distributors, as well as directly from beverage manufacturers. Nonetheless, Plaintiff alleges that its trade secrets include information such as "retailer contacts, sales levels, depletion amounts, retailer purchasing information, pricing ladders, promotion cadence, feature/reset calendars, and sales programs." (Compl., ¶ 18.) More specifically, Plaintiff alleges that "the datasets reveal—at a granular, account-specific level—which stores buy which SKUs, at what price points, on what cadence, with which features, and under which buyer preferences." (*Id*. at ¶ 20.) This information is not a trade secret.

"Information that is generally known by persons in the trade or that could easily be duplicated by reference to telephone directories or industry publications is not protectable." *Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp. 2d 977, 986 (C.D. Ill. 2003). "This is especially true in industries … where customers do business with more than one distributor so that their identities are known to competitors." *Id*. Plaintiff does not allege its customers are exclusive.

Furthermore, most of what Plaintiff alleges as a trade secret is information from or about its customers. "Illinois case law provides that a distributor has no proprietary interest in information belonging to the customer, such as the customer's own purchase history, needs and preferences." *Id*. (citing *Delta Med. Systems v. Mid–America Med. Systems, Inc*., 772 N.E.2d 768, 783 (Ill. App. Ct. 2002) (noting that a service provider "cannot control what a customer does with its own information"); *Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072, 1084 (Ill. App. Ct. 1992) (holding that client information is not a trade secret where it can be obtained by asking questions designed to elicit the information requested); and *A.J. Dralle, Inc. v. Air Technologies, Inc*., 627 N.E.2d 690, 697 (Ill. App. Ct. 1994) (holding that customer information that is readily available to competitors through normal competitive means, such as placing a cold

9

call and asking questions, is not protectable)). "*Therefore, a customer's purchase history is not confidential information.*" *Unisource*, 244 F. Suppl. 2d at 986 (emphasis added). Furthermore, while Plaintiff's Complaint relates to information exchanged with customers, such as price, Plaintiff does not allege that the customer had an obligation to keep this information confidential. "Illinois cases hold that pricing information conveyed to a customer that the customer is at liberty to divulge is not confidential." *Unisource*, 244 F. Supp. 2d at 987 (citing *Carbonic*, 547 N.E.2d at 678; *Applied Indus. Materials Corp. v. Brantjes*, 891 F. Supp. 432, 437–38 (N.D. Ill. 1994) (noting that "the Illinois appellate courts which have addressed the issue have consistently held that price information which is disclosed by a business to any of its customers, unlike a unique formula used to calculate the price information which is not disclosed to [the] business's customers, does not constitute trade secret information").

Because Plaintiff fails to properly identify trade secrets, demonstrate secrecy or independent economic value through the secrecy of its alleged trade secrets, Counts II and III of Plaintiff's Complaint should be dismissed.

### 3. Plaintiff Fails to Plausibly Allege Misappropriation of Trade Secrets.

Even if the Complaint had identified protectable trade secrets—which it does not—Count II and III still fail because the Plaintiff does not plausibly allege facts supporting misappropriation. Trade secret laws do not prohibit ordinary competition or continued participation in the marketplace, and Plaintiff alleges no facts showing that Canvas used or disclosed any specific trade secret. Instead, it merely speculates that misuse must have occurred after the parties' relationship ended. Courts dismiss trade secret claims when a plaintiff merely speculates that trade secrets were used or disclosed, without identifying the specific information or explaining why it qualifies for protection. *See, e.g.*, *Smietana v. Stephens*, No. 22 C 708, 2023 WL 3737720, at **11-12 (N.D.

Ill. May 30, 2023); *PetroChoice LLC v. Amherdt*, No. 22-cv-02347, 2023 WL 2139207, at **3-7 (N.D. Ill. Feb. 21, 2023).

### 4. Canvas Was Granted Authorization Access To The Information And Plaintiffs Failed To Plausibly Plead An Improper Disclosure Of It.

Where a defendant receives information through authorized access, a plaintiff must plead facts showing that the defendant used or disclosed the information for purposes inconsistent with the trade secret owner's interests. Mere access to or possession of alleged trade secret information—without plausible allegations of competitive use or disclosure—does not constitute misappropriation. *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020).

Plaintiff alleges that Canvas's directive to retailers to hold orders while transitioning to a new distributor "caused marketplace confusion and is evidence that it is more likely than not that Canvas was having discussions with competitors of Glunz." (Compl., ¶ 29.) But in the context of changing distributorships, questions arising during a transition period are a normal occurrence, not proof that Canvas disclosed confidential information. Importantly, Plaintiff does not allege that Canvas was prohibited from transferring its brand to a new distributor, only that it was required to compensate Plaintiff for doing so.

Plaintiff does not allege facts showing that Canvas disclosed the information to a competitor, used it to gain a competitive advantage, or otherwise exploited it for a purpose inconsistent with Plaintiff's interests. Instead, the allegations establish that Canvas obtained the information through the parties' commercial relationship and that it was exchanged in the normal course of their distribution partnership. At most, the Complaint suggests that Canvas relied on general knowledge it possessed before the Agreement and information it acquired during the Agreement. Plaintiff's allegations also focus on conduct that falls squarely within the scope of the

11

parties' relationship—such as downloading data during the Agreement—which does not plausibly support a claim of trade secret misappropriation.

Beyond its conclusory assertions—many of which are pled only "upon information and belief"—the unverified Complaint does not provide facts explaining how, when, what, or where Canvas misused or misappropriated any specifically identified trade secret. Such unsupported allegations fail to meet the plausibility standard. Likewise, the Complaint does not distinguish between Canvas's legitimate use of information obtained during the parties' business relationship and the alleged misuse of Plaintiff's trade secrets. Instead, it describes routine transition activities that typically occur when a manufacturer changes distributors—an event clearly expected by the Agreement.

### 5. Mere Possession of Information Post-Termination is Not Sufficient to Establish Misappropriations.

When a plaintiff voluntarily provides information to a defendant, misappropriation requires factual allegations identifying post-transfer conduct that was unlawful or in breach of a valid duty of confidentiality. Mere possession of trade secret information, or even an affirmative failure to return it after the end of a business relationship, does not constitute misappropriation unless there is evidence of unauthorized use or disclosure *See, e.g.*, *Croner*, 419 F. Supp. 3d at 1066-67 (rejecting the argument that failure to return information constituted misappropriation). Even where circumstances suggest possible use in competition, more is required to plausibly allege statutory misappropriation. For example, in *Croner*, the court held that mere possession of trade secrets, even when coupled with client solicitation or lost business, does not plausibly allege misappropriation. *Id*. There must be factual allegations showing that the defendant actually used or disclosed the information in an unauthorized manner.

### C. Count IV (Unjust Enrichment) Should Be Dismissed.

Under Illinois law, unjust enrichment is a "quasi-contract" theory that allows a court, in appropriate cases, to imply the existence of a contract, where none exists, to prevent unjust results. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). To state a claim for unjust enrichment, the plaintiff must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). However, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004). "The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Id.*

While Federal Rule of Civil Procedure 8 permits alternative pleading, as does Illinois pleading practice, courts applying Illinois law dismiss unjust enrichment claims at the motion to dismiss stage where the plaintiff alleges the existence of a valid and enforceable contract governing the same subject matter. *See, e.g.*, *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704-05 (Ill. App Ct. 2005) (affirming dismissal of unjust enrichment claim where the dispute concerns rights governed by contract). Here, Plaintiff alleges a valid contract governing the parties' relationship and its unjust enrichment claim arises from the same alleged conduct. Plaintiff concedes the claims are identical but alleges its unjust enrichment claim is pled "in the alternative" in case "the Agreement or any valuation provision is determined to be unenforceable, inapplicable, or not to fully govern the parties' rights…." (Compl., ¶ 68.) This is insufficient pleading.

"A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). But "[t]hat's not what [Plaintiff] is alleging here." *Id*.

Plaintiff here purports to reserve the alternative right to seek unjust enrichment if the Agreement, or the valuation provision thereof, is "inapplicable, or [does not] fully govern the parties rights…." (Compl., ¶ 68.) Illinois law, however, "prohibit[s] a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Utility Audit*, 383 F.3d at 688-89. The fact that some part of the Agreement might not apply, or might not apply fully, does not mean that Plaintiff can resort to quasi-contract to recover a benefit that Plaintiff failed to bargain for or realize under the Agreement. Through its Count IV, Plaintiff is attempting to have it cake and eat it, too. Plaintiff wants to use unjust enrichment not if the Agreement is unenforceable, but rather to supplement the Agreement if some of the Agreement is unenforceable. Plaintiff's attempt at inconsistent pleading is too reserved to stand. Accordingly, Count IV is duplicative and must be dismissed.

## III.    CONCLUSION

This is a straightforward contract case. Yet Plaintiff seeks to complicate these proceedings with vague trade secret allegations for information that it cannot possibly prove are trade secrets. In addition, it tacks on an impermissible quasi-contract claim which Illinois law prohibits. This Court should dismiss Counts II, III, and IV of Plaintiffs' Complaint at the pleading stage and award Canvas its costs and attorneys' fees incurred in defending against those claims.

14

Respectfully submitted,

CANVAS 340, LLC

By: /s/ Barry P. Kaltenbach
          One of Its Attorneys

Joseph M. Infante (ARDC 6329000)
infante@millercanfield.com
Barry P. Kaltenbach (ARDC 6270034)
kaltenbach@millercanfield.com
Miller, Canfield, Paddock & Stone, PLC
227 W. Monroe, Suite 3600
Chicago, Illinois 60606
(312) 460-4200
(local counsel)

Shauna Barnes
(sbarnes@drinkslaw.com)
Barnes Beverage Group
1910 Town Center Blvd. #250
Annapolis, Maryland 21401
(*admitted pro hac vice*)

15